(40 Misc. Rep. 404.)

### A. B. FARQUHAR CO., Limited, v. NEW RIVER MINERAL CO.

(Supreme Court, Trial Term, New York County.   April, 1903.)

1. SALE—PERFORMANCE OF CONTRACT.
   Where defendant contracted to deliver "two or three hundred tons" of pig iron, 25 tons in November, "and balance as ordered within the next six months," he sufficiently complied with the contract where he delivered 200 tons.

2. SAME—OPTION CONTRACT.
   If an executory contract to deliver "two or three hundred tons" of pig iron is an option contract, the vendee loses its right to require delivery of 300 tons unless it exercises its option within the six months in which by the terms of the contract it was to be performed.

3. SAME—EXTENSION.
   Where a vendee in a contract for the sale of iron has six months in which to exercise its option to require delivery of a certain amount, delay in delivering the first specific amount called for by the contract does not extend the time in which to exercise the option.

Action by the A. B. Farquhar Company against the New River Mineral Company.   Judgment for defendant.

Sherman & Stanton (H. H. Whitman, of counsel), for plaintiff.
A. S. Gilbert, for defendant.

HOUGHTON, J.   On the 19th of October, 1898, the plaintiff wrote to the defendant's sales agents with respect to the purchase of a quantity of iron, as follows:

"You can enter our order for 200 to 300 tons of Ivanhoe at 10.75 for 1–X and $10.50 for 2–X, deliveries to be made within the next six months as wanted.   You may ship one carload of 1–X next month."

To this order the defendant, through its agents, on the 20th of October, replied:

"We enter the order accordingly for 200 to 300 tons of 1–X or 2–X Ivanhoe pig iron, at $10.75 for 1–X and $10.50 for 2–X delivered f. o. b. cars. P. R. R. at York, Pa.   Terms, cash for 30 days.   Delivery 25 tons of 1–X in November, and balance as ordered within the next six months."

The defendant's furnace became out of repair, and the last lot of the 200 tons was not delivered until December, 1899.   Much correspondence was had between the parties, plaintiff urging shipment of the iron, and the defendant making excuses for not complying. On December 11th the defendant wrote the plaintiff that there were about 17 tons due to complete the plaintiff's order on the 200 tons, there having been up to that time about 183 tons delivered.   On the following day the plaintiff wrote the defendant that there was more than the 17 tons due on the order, and that it desired a car load every 10 days until the whole 300 tons which were purchased had been shipped.   Correspondence passed between the parties thereafter, plaintiff claiming that he had ordered 300 tons, and the defendant insisting that only 200 tons had been ordered, and thereafter shipped only enough to make up the 200 tons, and refused to ship the additional 100 tons to make the 300.   Iron had very largely advanced in

price during the year, and this action is brought by the plaintiff to recover the difference between the market price and the contract price on the 100 tons which the defendant refused to furnish. The last shipment the plaintiff did not pay for, amounting to about $200, and that it is conceded the plaintiff owes, and if it recovers that amount is to be deducted from its damages, and if it does not recover the defendant is entitled to a judgment therefor.

The theory of the plaintiff is that it had an option on an additional 100 tons at the price stipulated, and that it was not obliged to exercise that option until the first 200 tons had been delivered. If the plaintiff did have an option, it was not in fact exercised until controversy arose with respect to the last shipment of the 200 tons, which took place in December, more than a year after the giving of the order.

The defendant contends, among other things, that if there was any option it must have been exercised within the six months specified, and denies that any order for 300 tons was ever given and accepted.

There is some question whether the minds of the parties ever met on the order and acceptance. It will be observed that the order was for 200 to 300 tons, deliveries to be made within the next six months as wanted. The acceptance of the order was for 200 to 300 tons, 25 tons to be delivered in November, and balance as ordered within the next six months. If we place a strict interpretation on the acceptance of the defendant of the order of the plaintiff, and in the defendant's language, then it is clear that it was not bound to furnish any iron not ordered within the six months succeeding October 20, 1898, and placed the burden upon the plaintiff of ordering more than the 200 tons within the time limited.

But I think the fair interpretation of the correspondence between the parties should be said to be an agreement on the part of the defendant to furnish the plaintiff 200 to 300 tons of iron at the price stipulated. If that is a true interpretation of the contract, then the defendant performed its contract by furnishing the 200 tons, and is not in default for the additional 100 tons.

In Disborough v. Neilson, 3 Johns. Cas. 81, a party agreed to furnish and deliver 700 to 1,000 barrels of meal, and it was held that the election was with him alone as to whether he would furnish 700 or 1,000 barrels, and the buyer was compelled to accept the full 1,000 barrels if tendered.

In Wheeler v. Britton (Sup.) 17 N. Y. Supp. 749, there was an agreement that 3,500 to 4,000 tons of ice should be furnished, and it was held that a delivery of 3,500 tons fulfilled the contract.

In Standard Sugar Refinery v. Castano (C. C.) 43 Fed. 279, there was a contract for the sale of 700 to 800 tons of sugar, and it was held that the contract was fulfilled by the delivery of only 700 tons, although in the cargo was enough to make more than 800 tons.

In Small v. Quincy, 4 Greenl. 497, the agreement was for the delivery of from 1,000 to 3,000 bushels of potatoes, and it was held that the vendor had the right to deliver any quantity he chose, from 1,000 to 3,000.

In Sparkes v. Marshall, 2 Bing. (N. C.) 761, where there was an agreement to deliver from 500 to 700 bushels of oats, it was held that the delivery of 600 bushels to the common carrier fulfilled the contract and passed title to the property.

Under the contract the defendant was the obligor, and it was its duty to furnish the quantity of iron contracted for by the plaintiff. It is a general rule that when an obligation may be performed in one of two ways that the obligor has the right to elect in which way he will perform. As where a man agrees to pay in money or property he can pay in either. Interpreted in this way, the defendant could fulfill its contract, which it did, by delivering 200 tons. But, if the contract is to be interpreted as an option on an additional 100 tons, yet I think that the defendant must succeed because the plaintiff did not exercise its option within the six months limited by the contract.

In Topping v. Root, 5 Cow. 404, the plaintiff contracted with the defendant to deliver to him between the 1st of October and the 1st. of December 8,000 pounds of hops, the plaintiff to have the liberty of extending the quantity to 10,000 pounds upon giving reasonable notice. About the middle of October the 8,000 pounds had been delivered, and the plaintiff demanded the full 10,000 pounds, and sued to recover for nondelivery. It was held that the notice was unreasonable, and should have been given before the 1st of October.

In Sage v. Hazard, 6 Barb. 179, there was purchased a cargo of flour, provided the vessel arrived before the 10th of December, and if the vessel should not have arrived at said time the plaintiff had the option of continuing the agreement. The vessel did not arrive until the 28th of December, and on that day the plaintiff elected to continue the agreement, and the court held that he was too late; that the election should have been made immediately, or at the latest during December 11th, after the failure of the vessel to arrive.

Applying the strict rules indicated in the above cases, it is manifest that the plaintiff could not wait until the entire 200 tons was delivered, and then exercise its option, if it had one, with respect to the additional 100 tons, but must have ordered the additional 100 tons within the six months. I do not think it changes the situation that there was delay in the delivery of the first 200 tons. This delay was acquiesced in by the plaintiff, and the correspondence shows that the defendant was doing as well as it could to fill the plaintiff's order with those of its other customer's, in view of its misfortunes. The price of iron was steadily advancing from the making of the contract, and if the plaintiff desired to avail itself of the additional 100 tons it should have taken the precaution of exercising its option, and ordered the same from the defendant within the period prescribed.

The defendant raises the point that the plaintiff elected to hold the sales agents of the defendant instead of the defendant itself, after knowledge that the defendant was the real party to the contract. If I am right in the foregoing conclusions, it is unnecessary in disposing of the case to pass upon that question.

The balance owing by the plaintiff on the 200 tons is conceded to be $212.95, which is set up as a counterclaim in the defendant's answer.

The defendant is entitled to judgment for that amount, with interest from January 15, 1900, with costs.   Let a decision be prepared accordingly.

Judgment for defendant, with costs.